Raymond T. KING and Virginia M. King

v.

George P. MORDOWANEC (two cases).

Civ. A. Nos. 3397, 3932.

United States District Court

D. Rhode Island.

Feb. 18, 1969.

Leonard A. Kiernan, Jr., Providence, R.I., for plaintiffs.

Martin M. Zucker, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

These two suits are identical diversity actions commenced by the plaintiffs, citizens and residents of Rhode Island, against the defendant, a citizen and resident of Connecticut. The amount in controversy exceeds $10,000.

Specifically before the court at this time are the plaintiffs' motion in C.A. No. 3397 to vacate an order previously entered in that case and defendant's motion in C.A. No. 3932 for dismissal under Rule 41(b) or summary judgment under Rule 56(b). A detailed presentation of the history of these cases is essential to a clear presentation of the legal issues involved.

It appears from the complaint that on December 29, 1962 the plaintiffs, while riding in a car owned and operated by the plaintiff Raymond T. King, were struck by a car owned and operated by the defendant George P. Mordowanec. The plaintiffs claim that the defendant's negligence caused them injuries and damage amounting in the aggregate to at least $75,000. On November 30th, 1964, the plaintiffs filed their complaint and their lawyer entered his appearance. On December 21st, 1964 the defendant filed his answer, and on December 22nd his lawyer entered his appearance. On April 2nd 1965 interrogatories were propounded by the defendant to the plaintiffs and filed. On April 19, 1965 the case was continued to the next term.[1] On April 20th, 1965 the case was called and passed. On October 18th, 1965 the case was continued to the next term. On October 19th, 1965 the case was again called and again passed. On April 18th, 1966 the case was continued to the next term. On April 19th, 1966 the case was again called and again passed. On May 2nd, 1966 a notice of pending dismissal under Misc. Order No. 5904 was sent to counsel for both sides. Near the end of the April term, 1966, on October 3, 1966 the plaintiffs' counsel filed a motion to exempt the case from dismissal. The order grant-ing the plaintiffs' requested exemption from dismissal was entered on the same day, October 3, 1966, and the case was again placed on the calendar. On October 17, 1966 the case was continued to the next term. On October 18, 1966, some fifteen days after exemption from dismissal had been obtained, the case was again called and again passed for failure of the plaintiff to again have it called ready. On November 16, 1966 a notice of pending dismissal under Misc. Order No. 5904 was again sent to counsel for both sides. Finally, on April 17, 1967, an order was entered dismissing the case for failure to prosecute. On the same day, counsel for the plaintiff was notified of the entry of the order of dismissal. On January 25, 1968 the plaintiffs filed a motion pursuant to Fed.R.Civ.P. 60(b) (1) to vacate the order of dismissal of April 17, 1967, on the ground of excusable neglect.[2] On March 18, 1968 the plaintiffs' counsel filed an affidavit in support of the Rule 60(b) (1) motion. On March 19, 1968 the court entered an order which denied plaintiffs the relief sought under Rule 60(b) (1) from the dismissal of April 17, 1967. On April 17, 1968 the plaintiffs gave notice of appeal with respect to the court's March 19, 1968 order de-

---

1. An explanation of the practice of this District with respect to terms of court, calendar procedures, and dismissals for failure to prosecute will perhaps be helpful. There are two terms in this District: the April term, which commences on the third Tuesday in April and runs up to the day preceding the commencement of the October term, and the October term, which commences on the third Tuesday in October and runs up to the day preceding the commencement of the April term. On the first day of each new term the civil jury and non-jury calendars are called. Attorneys may indicate either that a case is ready for trial, in which instance the case then goes onto a ready calendar for that term, or that a case should be passed until the next term. During the term, as many of the ready cases as possible are sought to be moved to finalization by either trial or settle-ment. Any case not so finalized by the end of the term is continued to the next term. In accordance with Misc. Order No. 5904 any case which has been on the calendar for three full terms may be dismissed without prejudice and without costs, unless exemption from dismissal is obtained from the Court. The obvious purpose of this rule of court is to avoid lengthy delays by attorneys in getting their cases ready for trial. It should be noted, however, the exemptions are usually given as a matter of course, and that the members of the trial bar of this court have perhaps come to rely on the regularity with which exemptions may be obtained.

2. The motion was not specifically denominated a Rule 60(b) (1) motion, but a reading of its contents makes it clear that it was such a motion based on excusable neglect.

nying plaintiffs' Rule 60(b) motion to vacate the dismissal of April 17, 1967. Also, on April 17, 1968, the plaintiffs commenced C.A. No. 3932 in this court.

Between April 17, 1968 and the present the two cases have progressed as follows. C.A. No. 3397 has been dismissed on appeal as of July 31, 1968 for failure to prosecute, and the First Circuit has issued a mandate to that effect. In C.A. No. 3932 the defendant answered on May 2, 1968 and moved for dismissal pursuant to Fed.R.Civ.P. 41(b) and/or summary judgment pursuant to Fed.R.Civ.P. 56(b) on October 21, 1968. Moreover, in C.A. No. 3397 a motion pursuant to Fed.R.Civ.P. 60(b) (6) has been filed by the plaintiffs, upon the urging of the court, on January 7, 1969 seeking to vacate the court's prior order of April 17, 1967.

### Civil Action No. 3397

As was stated previously, on January 7, 1969 the plaintiffs filed a Rule 60(b) (6) motion urging the court to vacate its April 17, 1967 order of dismissal. The defendant has argued that such relief can not be granted in these circumstances because (1) as a matter of form, the plaintiffs' Rule 60(b) (6) motion lacks specificity as to the reasons for relief, (2) as a matter of law, the only ground for relief here is excusable neglect, and that ground can sustain relief only under Rule 60(b) (1) and within a year's time from the date of entry of the order sought to be relieved, (3) as a matter of law, the relief sought is untimely; and (4) as a matter of law the plaintiffs' intervening failure to prosecute appeal is a bar to relief. The court will treat each of these arguments in the course of its opinion.

Rule 60(b) states in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable ne-

glect * * * or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reason[s] (1) * * * not more than one year after the judgment, order, or proceeding was entered or taken.

■ The court will treat first the contention that the plaintiffs' motion lacks the specificity required by Fed.R.Civ.P. 7(b) (1) which states that a "motion * * * shall state with particularity the grounds" for its granting. No doubt, the plaintiffs' motion is not on its face in perfect conformity with that rule of pleading. See 7 Moore's Federal Practice paragraph 60.28(3) at p. 326. However, in the context of this case, it can hardly be said that defense counsel was unaware of the specific grounds of the plaintiffs' motion. In fact, those grounds were stated by the court to both counsel at oral argument on January 6, 1969 and were discussed at in-chambers argument on February 13, 1969. To require a *pro forma* redrafting of the plaintiffs' January 7, 1969 motion, is in these circumstances an unnecessary act.

■ It has been argued that the basis for relief here can only be the excusable neglect of plaintiffs' counsel. If that were true, then much of defendant's argument concerning the exclusivity of the various subsections of Rule 60(b) would be compelling. Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949); United States v. Karahalias, 205 F.2d 331 (1953); Davis v. Wadsworth Construction Co., 27 F.R.D. 1 (E.D.Pa.1961). See generally 7 Moore's Federal Practice paragraph 60.27(1) at pp. 293–297 and Supp. at p. 29. Indeed, it was a Rule 60(b) (1) claim of excusable neglect that was rejected by the court on March 19, 1968. Here, however, the plaintiffs' new counsel argues that the gross neglect of plaintiffs' former counsel, coupled with the absence of neglect on the part of the plaintiffs, constitutes "any other reason justifying relief" with-

in the meaning of Rule 60(b) (6). In a case strikingly similar to this case, a federal district court judge in the District of Columbia granted such relief. L. P. Steuart, Inc. v. Matthews, C.A. No. 17504 (Oct. 22, 1962). His decision was upheld 2–1, by the District of Columbia Court of Appeals. L. P. Steuart, Inc. v. Matthews, 117 U.S.App.D.C. 279, 329 F.2d 234 (D.C. Cir. 1964). Unless the dissenting opinion of Judge Miller in that case is to be accepted as the better view, it must be deemed controlling here. It can be said that it was not until very recently that Mr. King became aware of the gross neglect of his former counsel.[3] Likewise, for the reasons stated in the transcribed remarks of the court on March 18, 1968, the neglect is as gross here as it was there.[4]

With respect to this facet of the defendant's argument, it remains to be considered whether Judge Miller's reading of Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) requires acceptance of his dissent in *Steuart*. Judge Miller reasons in two steps: first, that to grant relief in a case of this sort is to say that a client is not responsible for his counsel's inexcusable neglect; second, given the first proposition, the *Link* case is violated. In neither respect can this court agree with Judge Miller. The import of the majority decision in *Steuart* is that *gross* neglect of a lawyer in failing to prosecute his client's case is beyond Rule 60(b) (1) and, hence, within Rule 60(b) (6), as long as the client is unaware of and

does not share in his lawyer's negligence. See Jones v. Roundtree, 225 A.2d 877 (D.C.Ct.App.1967); cf. Barber v. Turberville, 94 U.S.App.D.C. 335, 218 F.2d 34 (1954). Even assuming, however, that this frees a client from his lawyer's blunders in certain limited circumstances, as Judge Miller contends, *Link* is not violated because it is not here applicable. *Link* involved the question whether in the absence of a defendant's motion and in the absence of a local rule a federal trial court judge could dismiss a case with prejudice under Rule 41(b) for failure of plaintiff's counsel to attend a pretrial conference and for general dilatoriness of plaintiff's counsel. *Link* expressly left open the question whether in such circumstances, Rule 60(b) relief could be obtained. As the majority stated at pp. 635–636, 82 S.Ct. at p. 1391:

> Nor need we consider whether the District Court would have been abusing its discretion had it rejected a motion under Rule 60(b) which was accompanied by a more adequate explanation for the absence of petitioner's counsel from the pretrial conference. No such motion was ever made * *.

Indeed, *Link* suggests two themes which would seem to support the granting of relief. First, *Link* points out by implication that Rule 60(b) may indeed be the means by which dismissals under Rule 41(b) or some local rule of court for want of prosecution may be vacated in order to protect a client with a substantial claim from suffering at the hands of a sloppy lawyer.[5] Second, *Link*

---

3. At in-chambers argument on February 13, 1969 plaintiffs' new counsel stated that plaintiffs had been unaware of the seriousness of the threat to the existence of their claim until very recently.

4. Neither logic, common sense, nor justice requires this court to credit the affidavit of March 18, 1968. How could plaintiffs' original counsel have understood the May 2, 1966 notice informing him that his case was subject to dismissal "for the present term" (April Term 1966), have obtained an order of exemption from dismissal "for the present term" (April Term 1966) and

then have misunderstood the November 16, 1966 notice regarding dismissal at the end of October term, and have failed to seek an exemption therefrom? It is simply inconsistent. Perhaps even more perplexing is plaintiffs' original counsel's failure to seek relief from the April 17, 1967 dismissal, of which he was notified on the same day, until January, 1968. Given these facts, it is no exaggeration to characterize counsel's neglect as gross.

5. Hereafter, beginning with April Term, 1969, it will be the practice of this court

points up the highly discretionary nature of the grant of Rule 60(b) relief. As *Link's* language implies, the liberal purpose of Rule 60(b) seems to indicate that a district court decision granting relief is less apt to be turned over on appeal than such a decision denying relief. In any case, *Link* cannot be used as a reason to deny 60(b) relief in this case.

■ The defendant next argues that the time period between the entry of the order of dismissal on April 17, 1967 and the making of the plaintiffs' motion pursuant to Rule 60(b) (6) on January 7, 1969 is so great as to preclude any determination of reasonableness. It is settled beyond dispute that the reasonableness required by Rule 60(b) (6) with respect to the timeliness of motions is dependent on the circumstances of the case. See 7 Moore's Federal Practice paragraph 60.27(3) at p. 311. In the circumstances of this case the plaintiffs' motion, though made approximately one year and nine months after the entry of the order of dismissal, is made within a reasonable time because the reason for that motion was not made clear until January 6, 1969 when plantiffs' new counsel argued before the court. It could hardly be supposed that plaintiffs, as laymen, could grasp the distinctions between excusable neglect of counsel and gross neglect of counsel unbeknownst to a client, that is, between 60(b) (1) relief and 60(b) (6) relief in the circumstances of this case. Nor can it be supposed that plaintiffs' original counsel perceived this distinction and hence should have argued it to the court on March 18, 1968. Wholly apart from the fact that such an inference would cast a shadow on the ethics of plaintiffs' original counsel,[6] it must be concluded on this record, that plaintiffs' original counsel simply did not know of the distinction.[7] It was not until new counsel became involved that the opportunity arose to make the instant motion. New counsel became involved peripherally by the entry of his appearance in C.A. 3932 on November 18, 1968 and became involved directly in this case and the instant motion by virtue of the oral exchange between counsel for both sides and the court on January 6, 1969. Since the motion was filed the next day, it was timely. Hence, it must be concluded that in these circumstances the plaintiffs' Rule 60(b) (6) motion was made within a reasonable time. See Cavalliotis v. Salomon, 357 F.2d 157 (2d Cir. 1966). Cf. Lucas v. City of Juneau, 20 F.R.D. 407 (D.Alaska 1957); Pierre v. Bernuth, Lembcke Co., 20 F.R.D. 116 (S.D.N.Y.1956).

■ Finally, it cannot be claimed that plaintiffs' failure to prosecute appeal or the mandate of the First Circuit Court of Appeals entered on July 31, 1968 bars 60(b) (6) relief here. The order of March 19, 1968 concerned only the Rule 60(b) (1) request. The basis for relief here could not have been the basis for the appeal and cannot be said to have been within the ambit of the First Circuit's mandate. Phrased differently, even if the validity of the order had been prosecused on appeal and affirmed, this motion could nevertheless be granted.

---

to notify clients, where possible, of their lawyers' dilatoriness in cases such as this and to use the fine as a means of enforcing the court's rule rather than to use the dismissal as a means of visiting upon the often innocent client the sins of his attorney. Indeed, the court is inclined to consider the use of an assessment of defendant's costs, in preparing and presenting these motions, against plaintiffs' original attorney, if defendant chooses to pursue such a ruling.

6. See R.I.B.A. Canons 6 and 8.

7. The entire tenor and every detail of the March 18, 1968 argument supports the conclusion that the only basis on which plaintiffs' original counsel thought he could shake free of the April 17, 1967 dismissal was excusable neglect. He urged his own neglect, although excusable, so forthrightly that it is impossible for the court to suspect any awareness and suppression, on his part, of the basis now urged for relief.

█ For all these reasons, the court concludes that Rule 60(b) (6) relief from an order of dismissal should be granted where, as here, plaintiffs are unaware of their attorney's gross neglect in failing to prosecute and where, as soon as new counsel becomes involved, the Rule 60(b) (6) motion is made.

█ The motion is granted and the case is ordered to be reinstated and placed on the current civil jury trial calendar.

### Civil Action No. 3932

Because of the possibility that the court's decision in C.A. No. 3397 could be deemed erroneous on appeal and in order to expedite proceedings and allow all of the questions of law in these cases to be decided together on appeal, the court has decided to rule on the defendant's motions in C.A. No. 3932.[8] In this case, it will be recalled, the defendant has answered the complaint and has moved for dismissal and summary judgment pursuant to Rules 41(b) and 56(b). Defendant's motions are based on the affirmative defenses of res judicata and the statute of limitations. Plaintiffs oppose those motions on the basis that they are improperly pleaded and, even if properly pleaded, incorrect on the merits.

█ The court will deal first with the procedural aspects of the case. At the outset, it must be recognized that the defendant's use of Fed.R.Civ.P. 41(b) is incorrect. As the plaintiffs have argued, Rule 41(b) can be used by a defendant only when a plaintiff fails to prosecute or to comply with the rules or an order

of court. Thus far, in C.A. No. 3932, the plaintiff has complied with Rule 41(b) in every necessary respect.[9] Accordingly, the court denies the defendant's Rule 41(b) motion for dismissal.

█ The plaintiffs in their brief likewise object to the defendant's use of Rule 56(b) to raise on motion the affirmative defenses of res judicata and statute of limitations. The plaintiff is incorrect. It is now beyond doubt that summary judgment or a motion to dismiss under Rule 12 is a proper means by which a Rule 8 affirmative defense may be placed before the court. See 2A Moore's Federal Practice at paragraph 8.28, pp. 1864–1865 and nn. 6–7; see 1968 Supp., *ibid.* Here, because a full understanding of the case requires the court, at least for the res judicata defense, to refer to matter outside the pleadings, namely the record in C.A. No. 3397, a motion for summary judgment is the best means to raise the questions presented. The court supposes that a more perfect motion for the statute of limitations defense might have been a Rule 12 motion—because the necessary dates appear on the face of the pleadings—but that is of little matter, as, in this context, nothing is lost by the use of Rule 56 when Rule 12 would suffice.[10]

█ The court next considers the defense of res judicata. A proper consideration of that defense requires recitation of some of the facts. As the court has indicated, the accident in question in this case occurred on December 29, 1962. On November 30, 1964, a summons and complaint were filed by plaintiffs in this

---

8. If the decision in C.A. No. 3397 granting the plaintiffs' Rule 60(b) (6) motion to vacate should be affirmed, then C.A. No. 3932, having been initiated after C.A. No. 3397 and on the assumption that C.A. No. 3397 was forever dead and buried, would be barred by the doctrine of res judicata. Phrased differently, C.A. No. 3932 comes into play only if (1) the plaintiffs win at trial and (2) defendant obtains reversal on appeal of the court's decision in C.A. No. 3397 granting the plaintiffs' Rule 60(b) (6) motion to vacate.

9. The court conjectures, however, that the defendant's reference to Rule 41(b) may well be attributable to that rule's application to the issue of res judicata, to be discussed *infra.*

10. It should be noted that the converse is not true. The use of Rule 12 to dismiss on the basis of a statute of limitations defense is reversible error when recourse is had to matter outside the record. Herron v. Herron, 255 F.2d 589 (5th Cir. 1958).

court against the present defendant, commencing C.A. No. 3397. Defendant received notice of the action and filed answer on plaintiff on December 21, 1964. Then, on April 17, 1967 the case was dismissed in accordance with Misc. Order No. 5904 of this court.[11] On March 19, 1968 the plaintiffs' argument to vacate the dismissal of April 17, 1967 was heard and denied. Appeal of that dismissal was initiated on April 17, 1968, and on that same day this action, C.A. No. 3932, was commenced by the same plaintiffs against the same defendant on the same theories as C.A. No. 3397. The defendant has argued orally and in his brief that the April 17, 1967 dismissal was with prejudice and that this action is, hence, barred. However, a consideration of Fed.R.Civ.P. 41(b), which governs involuntary dismissals with prejudice together with a consideration of Misc. Order No. 5904, convinces the court that the dismissal of April 17, 1967 was without prejudice. Fed.R.Civ.P. 41(b) states in pertinent part:

> Unless the court in its order for dismissal otherwise specifies * * * any dismissal not provided for in this rule * * * operates as an adjudication upon the merits.

Consequently, when a court dismisses a case under a rule of court supplementing the federal rules, unless the court states that the dismissal is without prejudice, it will be with prejudice. In this case, however, Misc. Order No. 5904 itself states that a dismissal under it shall be without prejudice. This must be taken to be the necessary specification required by Rule 41(b). Hence, the dismissal of April 17, 1967 was without

prejudice and C.A. No. 3932 is not barred by C.A. No. 3397.[12]

The second of the defendant's arguments for summary judgment is that the statute of limitations has been violated, and hence this action should be barred. There is little question that federal courts look to state statutes of limitations under the principles of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), see Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and that the Rhode Island statute of limitations in this case, R.I.G.L. § 9–1–14, as amended, 1956, bars a cause of action for personal injuries which is not brought within two years from the date of its accrual. If that were the sum total of the contentions, this court's task would be simple. However, the arguments here go further.

Specifically, the plaintiffs seek to "save" their causes of action from the statute of limitations by the application of the terms of R.I.G.L. § 9–1–22, as amended, 1956. The defendant does not attempt to avoid the applicability, for *Erie* purposes, of the Rhode Island "saving statute." Even had the defendant chosen to do battle on this ground, it is questionable whether it could have gained success. See Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464 (1945); Ragan v. Merchants Transfer and Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). The defendant, however, does seek to do battle on whether the plaintiff comes within the specific terms of § 9–1–22.

There are certain threshold questions with respect to which of two possible versions of § 9–1–22 here governs.[13] The

11. See note 1, *supra.*

12. See note 8, *supra.*

13. The 1962 version of § 9–1–22 states in pertinent part:
 If any action which has been * * * commenced within the time limited

* * * therefor, shall be abated or otherwise avoided or defeated * * * for any matter * * * the plaintiff may commence a new action for the same cause, at any time within one (1) year after the abatement or other determination of the original suit as aforesaid * * *.

plaintiffs have argued that the 1965 amendment to § 9–1–22 cannot be the controlling statute here. The court, however, perceives a doubly difficult problem. First, there is the question of whether the 1965 amended statute is applicable. Second, if the 1965 amended statute is applicable, there is the question of whether the plaintiffs are excluded from the statute's benefits by the statute's own terms.

As to the first question the court must decide whether the 1965 version of the statute should be applied to a cause of action which arose in 1962. The plaintiffs argue that a 1965 amendment to a statute cannot be pertinent to a case involving a 1962 injury. The plaintiffs further argue that a "saving" statute, such as this one, must, for purposes of determining whether it should be applied retrospectively or prospectively, be classified as substantive and hence governed by the general rule that substantive statutes are applied only to facts occurring after their enactment. The court has no quarrel with the plaintiffs' argument concerning the substantive nature of the statute. But the court does think that some clarification of the sequence of events is necessary. The accident occurred on December 29, 1962, at which date the statute of limitations commenced to run. Action was filed on November 30, 1964, approximately one month prior to the expiration of the limitations period.[14] The very earliest date at which § 9–1–22, even if substantive, could have been applicable was December 30, 1964. The date upon which in fact it became necessary to utilize § 9–1–22 was April 17, 1967. It is possible to argue that the substantive rights, which plaintiffs well recognize § 9–1–22 was designed to protect, did not come into being until well after 1965 and that, hence, the 1965 version of § 9–1–22 is applicable even on the basis of purely prospective application. The question really is "prospective from what date— the date the plaintiffs might have had to seek the statute's protection, or, the date when they actually had to seek it, or, as plaintiffs seem to contend, the date when the original cause of action accrued and the statute began to run?" The court thinks that the plaintiffs are correct when they point to December 29, 1962 as the controlling date. The reason for the court's conclusion is the integral relation of the saving statute with the limitations statute. The proper construction of those statutes appears to the court to be that a plaintiff has *from the date of the accrual of his cause of action,* the obligation to commence it within the allotted time and certain residual *rights* to commence it anew should it have been commenced within the limitations period but dismissed on the basis of some technical rule and not on the merits—as long as the new action is within one year from the date of the technical non-merits dismissal. The residual rights, though perhaps never to be needed, exist, in this court's view, as of the date of the accrual of the cause of action. That date, under the facts of this case, was December 29, 1962, the date of the accident and injury to the plaintiffs.

The second question—whether the 1965 version of § 9–1–22 bars the plaintiff—need not be ruled upon due to the court's treatment of the first question.[15]

The 1965 version of § 9–1–22 states in pertinent part:
> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff * * * may commence a new action upon the same claim within one (1) year after the termination.

14. § 9–1–14, R.I.G.L.1956, as amended, establishes a two-year statute of limitations for personal injury actions.

15. The court finds it difficult to see how the plaintiffs could avoid the explicit stat-

The court comes now to the contest concerning whether § 9–1–22 protects the plaintiff in these circumstances. The statute states in pertinent part:

> If any action which has been * * * commenced within the time limited * * * therefor, shall be abated or otherwise avoided or defeated * * * for any matter * * * the plaintiff may commence a new action for the same cause, at any time within one (1) year after the abatement or other determination of the original suit as aforesaid * * *.

The defendant argues that a voluntary dismissal by a plaintiff is not within the protection of this statute, and that the dismissal in this case is voluntary within the meaning of Rhode Island case-law development. The plaintiff argues (1) that this dismissal was not voluntary within the meaning of the Rhode Island cases and (2) even if it was voluntary, voluntary dismissals are within the statute's protective purposes.

The court first considers whether this dismissal was voluntary within the meaning of the Rhode Island cases construing § 9–1–22. In Robinson v. Merchants' and Miners' Transportation Co., 16 R.I. 637, 19 A. 113 (1889), the Rhode Island Supreme Court held that a plaintiff's failure to comply with a court order to furnish surety for costs was voluntary and that therefore the plaintiff, in the absence of a showing of financial inability to furnish surety, could not seek the protection of the saving statute. The Court stated at p. 639, 19 A. p. 115:

> * * * if a plaintiff, having been ordered to furnish surety, fails to do so, either from choice, or from willful neglect to use proper effort, his failure is to be deemed a voluntary default.

In Gray v. Ahern, 63 R.I. 363, 9 A.2d 38 (1939), the Rhode Island Supreme Court held that a plaintiff, who, having commenced an action against Ahern's estate, and having failed to file a request for jury trial or to convince Ahern's estate to stipulate to jury trial, discontinued her action, could not seek the protection of the "saving" statute when her subsequently initiated jury action was beyond the six-month limitation period for claims against a decedent's estate. The court specifically referred to the *Robinson* case, *supra*, and held that the plaintiff's "original action was terminated by her own discontinuance of that action."

In Giarruso v. Brown and Sharpe Mfg. Co., 72 R.I. 229, 50 A.2d 72 (1946), the Rhode Island Supreme Court, over defendant's concession of the point and plaintiff's vigorous argument, held that a plaintiff's failure to prosecute was voluntary and that such plaintiff could not claim the protection of the "saving" statute. The Court discussed the *Robinson* case, *supra*, and held at pp. 237–238, 50 A.2d at p. 76:

> "The instant plaintiff's failure to prosecute her original action was tantamount to a voluntory nonsuit and she is, therefore, not entitled to the benefit of * * * (the saving statute)."

 The court is faced, then, with the difficult task of distinguishing these cases from the instant case if plaintiffs' argument is to be accepted. It appears to the court that the determination of voluntariness turns on whether the plaintiff actually offered opposition to the attempted discontinuance of the suit. In *Robinson*, for example, plaintiff made no attempt, upon mandate of the court, to either reply as

---

utory terms of § 9–1–22 in its 1965 form, by which terms the saving statute is not

available to plaintiffs whose actions are dismissed for failure to prosecute.

to financial inability or to furnish surety. In *Ahern*, the plaintiff, as a matter of tactics in her desire to get a jury trial against the defendant decedent's estate, voluntarily discontinued her own action. And in *Giarruso*, plaintiff's attorney, upon plaintiff's failure to appear for trial, made no attempt in open court or otherwise, to avoid dismissal. Here however, the plaintiffs' attorney not only registered objection to the April 17, 1967 dismissal but subsequently appeared before the court on March 18, 1968 to attempt to persuade the court to vacate the April 17, 1967 dismissal. This dismissal was certainly not voluntary within the common-sense definition of that term, for it was compelled by a rule of court.[16] This court thinks such a compelled dismissal comes within the *Robinson* case's requirement that nonsuit result from some external source, beyond the plaintiff. *Cf.*, also, Sullivan v. White, 36 R.I. 488, 90 A. 738 (1914). Accordingly, the court holds that plaintiff comes within the terms of § 9-1-22 and may have the protection of that statute. Because of this holding, it is not necessary for this court to reach the question of whether Monroe v. Lavimodiere, 50 R.I. 95, 145 A. 305 (1929), and the current trend compel a conclusion that nonsuits, even though voluntary, are within the protection of the 1962 version of § 9-1-22.[17]

The defendant's motion for summary judgment on the statute of limitations issue is denied.

The defendant's motions under Rules 41(b) and 56(b) are denied.

16. It is interesting to note and mildly persuasive, although far from compelling, that Fed.R.Civ.P. 41(b) denominates a dismissal of this sort as involuntary.

17. A considerable amount of the plaintiffs' brief is devoted to urging that proposition. While the court expresses some congeniality with the plaintiff's position, it must be noted that the court, controlled as it is by *Erie*, would have to decide that the Rhode Island Supreme Court, if now given the opportunity, would reverse its explicit position that voluntary nonsuits are not within the protection of the pre-1965 version of the saving statute. See cases, cited, *supra*, especially the *Robinson* case.