**In re IRECO INDUSTRIES, INC., a Delaware Corporation, Bankrupt.**

**Everette H. WILLIAMS, Trustee, Plaintiff,**

**v.**

**CAL INDUSTRIES, INTERNATIONAL, a Division of A. C. Industries, Inc., Defendant.**

Bankruptcy No. 77–02761.

United States Bankruptcy Court, D. Oregon.

Dec. 17, 1979.

Steven A. Hutchinson, Eugene, Ore., for plaintiff.

Laura A. Parrish, Eugene, Ore., for defendant.

## OPINION

C. E. LUCKEY, Bankruptcy Judge.

### FACTUAL BACKGROUND

On October 19, 1977 Ireco Industries, Inc., (Ireco) filed a petition for reorganization under Chapter XI of the Bankruptcy Act. No timely plan of reorganization was filed and on April 12, 1978 notice was given of a creditors meeting and hearing to be held April 26, 1978 for determination whether the case should be dismissed or the debtor adjudicated a bankrupt under the provisions of Bankruptcy Rule 11–42. At the hearing the debtor-in-possession filed its consent to adjudication and an order of adjudication adjudicating the company a bankrupt was entered.

After the April 12 notice of hearing and before the April 26 hearing under Bankruptcy Rule 11–42, the president of the debtor-in-possession sold to Cal Industries, International, a Division of A. C. Industries, Inc., (Cal Industries) a holding block for $5,000.00 pursuant to an Order entered April 21, 1979 based upon stipulation of the Oregon Bank which held a security interest therein, and a security interest in substantially all of the debtor's assets to secure an obligation of $1,170,259.39, plus accrued interest, which had been reduced to approximately $780,000.00.

On September 22, 1978, the trustee in the proceedings filed a Complaint against Cal Industries, alleging that on or about April 17, 1978 the bankrupt sold and delivered goods to the Defendant for which the Defendant agreed to pay the sum of $36,-453.19. (The record reflects no stipulation

from the secured creditor as was customary, and no application for leave to make the sale was made and no order authorizing the sale by the debtor-in-possession was entered).

As a second cause of action the Plaintiff alleged that the Defendant made and delivered a check dated April 17, 1978 for $36,-453.19 payable to Ireco. The check contained the business address of Cal Industries as 2109 Industrial Circle, Long Beach, California, and a copy is attached to the Complaint as an exhibit thereto. The Plaintiff alleges, however, that the check was dishonored upon presentation because of a stop payment order placed on the check by the Defendant.

On September 27, 1978, based upon the Complaint a Summons and Notice of Pretrial Conference was issued requiring the Defendant to file a motion or an answer to the Complaint on or before November 3, 1978, and notifying the Defendant that if the Defendant failed to do so not later than the second business day thereafter an order of default would be taken against Defendant for the relief demanded in the Complaint. The Summons was on Bankruptcy Official Form 26 and further notified the Defendant that a Pre-trial Conference with respect to the Complaint had been set for November 14, 1978 at a specified place and time. Proof of service filed included Defendant's acknowledgment of receipt of the certified mail certified as including the Summons and Complaint on October 2, 1978, at Long Beach, California.

No motion or answer was timely filed in response to the Summons and there was no appearance by the Defendant at the time fixed for Pre-trial Conference. The following day a Motion for an Order of Default and Judgment was presented by the Plaintiff and entered in accordance with the prayer of the Complaint for $36,453.19 plus interest in the sum of $1,263.86 plus attorneys fees to be fixed.

On January 12, 1979, the Defendant through Eugene, Oregon attorneys new to the proceedings, after the entry of the Default, filed a Motion for Relief from the Judgment, moving the Court for an order vacating and setting aside the Order and Judgment of Default entered November 15, 1978, on the ground that the Court lacked jurisdiction to enter the Order and upon the ground that the Order was taken by reason of the Defendant's mistake, inadvertence, surprise and excusable neglect, and further moving the Court for an order granting leave to the Defendant to serve and file an amended answer, and without waiving its right to object to the Court's exercise of summary jurisdiction.

The Defendant's Motion was resisted by Plaintiff and calendared for hearing. The parties offered memoranda, exhibits and testimony in support of their positions.

Defendant's memorandum filed with the motion, and by supplemental memorandum filed January 30, 1979 rely on Rules 60(b)(1), 60(b)(4) and 60(b)(6), Federal Rules of Civil Procedure, the latter on contention that the Defendant should not be bound by the conduct of its California attorney, one James Plooster, who failed to make a timely appearance.

Bankruptcy Rule 924 makes applicable Rule 60 F.R.C.P. with exceptions not relevant here.

## SUMMARY JURISDICTION EXERCISE

Defendant objects to the disposition of this matter in a summary proceeding. Consideration of Defendant's Motion urging lack of jurisdiction makes appropriate examination of the complex interplay of §§ 2a(7) and 23(b) of the Bankruptcy Act. Defendant asserts that it is a party with "substantial adverse claims of right" and is entitled by § 23 to a plenary adjudication of its defenses. The trustee, Everette H. Williams, seeks recovery from Defendant on a chose in action. Choses in action have been considered property constructively within the possession of the court sufficient to confer summary jurisdiction for enforcement against non-consenting third parties. See Vol. 2 *Collier on Bankruptcy* ¶ 23.05[4], 492, 14th Ed.; *Matter of Marsters*, (7th Cir.) 101 F.2d 365 (1939), c. d., 306 U.S. 663, 59 S.Ct. 788, 83 L.Ed. 1059.

■ The question then becomes whether Defendant can be deemed to have consented to a summary determination of its rights under § 2a(7) and Bankruptcy Rule 915. It is well settled that in all cases where a party is entitled to the determination of its rights in a plenary action, it may nevertheless consent to the exercise of summary jurisdiction by the Bankruptcy Court. *Colliers*, Id. ¶ 23.08[1], p. 532.

Of the forms in which this consent to summary adjudication might take, the one relevant here is the consent which is implied by Defendant's failure to timely object to the Bankruptcy Court's exercise of summary jurisdiction. In 1952 Congress amended § 2a(7) by adding the following clause:

". . . and where in a controversy arising in a proceeding under this Act an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of the court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction."

Bankruptcy Rule 712 provides that Rule 12(b)–(h) of the F.R.C.P. applies in adversary proceedings except that "an objection to the jurisdiction of the court of bankruptcy is governed by Rule 915." Rule 915(a) provides that:

"Except as provided in Rule 112 and subject to Rule 928, a party waives objection to jurisdiction of an adversary proceeding or a contested matter and thereby consents to such jurisdiction if he does not make objection by a timely motion or answer, whichever is first served."

Whether a motion or answer is timely is determined by Bankruptcy Rule 712 which requires a defendant to serve an answer within 30 days after the issuance of the summons, except when a different time is prescribed by the Court. In the instant case, Defendant was duly served with the Summons and Complaint. No answer or motion was filed within the prescribed period, nor before the noticed Pre-trial Conference.

Defendant contends that the only basis for implied consent to the Court's exercise of jurisdiction is by virtue of appearance and failure to timely object. However, Defendant cites no authority specifically so holding, and the explicit language of § 2a(7) and Bankruptcy Rule 915 is contrary to such a conclusion. Consideration of the relationship between the consensual basis established in § 2a(7) and the consent clause of § 23(b) is critical to an understanding of the proper ambit of consent as a basis of subject matter jurisdiction and the effect of the consensual basis upon the right of an adverse party to a plenary disposition of its defenses.

Section 23 provides:

"(a) The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this title, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

(b) Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant, except as provided in sections 96, 107, and 110 of this title."

The limitation on the scope of jurisdiction as reflected in § 23 was responsive to policy judgments as to the proper distribution of plenary jurisdiction between the state and federal courts. Section 23 was not responsive to, nor was it intended to reach, the problems of distribution of adjudications (within the subject matter jurisdiction of the federal courts, however acquired) as between summary proceedings and plenary proceedings. *Schumacher v. Beeler*, 293

U.S. 367, 371, 372, 55 S.Ct. 230, 79 L.Ed. 433 (1934).

Section 2a(7), the other jurisdictional clause resting upon consent, embraces two concepts: jurisdiction over the subject matter of a controversy and the manner in which such jurisdiction is to be exercised. The 1952 consent clause amendment (discussed supra) provided in substance, that power over the subject matter of a controversy could be exercised summarily unless an objection was interposed in the manner specified by the amended clause. Two critically important points appear on the face of the 1952 amendment: (1) the quality of the consent referred to is quite different from the consent of § 23(b), and (2) the consequence of that consent is to subject the consentor to a specified mode of adjudication as well as to establish jurisdiction over the subject matter in the court of bankruptcy. Thus, where the trustee institutes summary proceedings § 2a(7) can operate as an omnibus consent provision upon the adverse claimant's failure to timely object (1) to the existence of subject matter jurisdiction and (2) to the exercise of that jurisdiction summarily. There is support for such a construction in the legislative history of the 1952 amendment. In any event, it clearly appears that the amendment was intended to regulate the procedural defense to a summary proceeding where the adverse party could have had plenary determination.

The differences between plenary and summary proceedings have been called "largely procedural rather than substantive". *Central Republic Bank and Trust Co. v. Caldwell*, 58 F.2d 721, 732 (8th Cir., 1932). This is especially true since the advent of the Bankruptcy Rules as most of the litigation within the jurisdiction of bankruptcy are now governed by procedural rules which closely adhere to the Federal Rules of Civil Procedure. This case must apply the law prior to October 1, 1979 but the new Bankruptcy Code is clearly the fulmination of the trend to keep bankruptcy related litigation in the bankruptcy courts. The time for pleading and hearing is fixed in both cases

except that recognizing the need to avoid the delay incidental to conventional litigation, the Bankruptcy Rules provide that notice of the trial date accompany the summons and complaint.

Summary adjudication must comply with all requirements of procedural due process. "Summary procedure fairly conducted is not a denial of due process of law." *Shor v. McGregor*, 108 F.2d 421, 424 (5th Cir., 1939).

The right to have issues determined in a plenary action is a personal privilege and does not touch the jurisdiction of the Court. The difference affects the style of adjudication but could hardly be characterized as substantially affecting the outcome of adjudications of asserted claims. *In re Cuyahoga Finance Co.*, 136 F.2d 18, 21 (6th Cir., 1943).

## SUBJECT–MATTER JURISDICTION

Defendant asserts that Plaintiff's Complaint does not adequately alleged subject-matter jurisdiction of the federal courts, pointing out that it does not allege the state of incorporation or the principal place of business of either Plaintiff or Defendant. Such allegations are indeed jurisdictional. However, vacation of the Default Judgment on this basis is not mandatory. From the entire record and documents produced at the May 8, 1979 hearing on the Motion For Relief From Judgment evidence was submitted establishing Oregon as Plaintiff's citizenship situs, the bankrupt was established to be a Delaware corporation with Oregon as its principal place of business and California as Defendant's state of incorporation and principal place of business. Although citizenship of the parties sufficient to establish diversity should be distinctly and affirmatively averred, 28 U.S.C. § 1653 provides that defective allegations "may be amended, upon terms, in the trial or appellate courts". In *McCurdy v. Greyhound Corporation*, 346 F.2d 224 (3rd Cir., 1965), amendment pursuant to § 1653 was permitted where the complaint failed to allege where the corporation was incor-

82

porated and where it had its principal place of business. The United States Supreme Court, in *Sun Printing and Publishing Association v. Edwards*, 194 U.S. 377, 382 (1904), stated:

> "The whole record, however, may be looked to, for the purpose of curing a defective averment of citizenship, where jurisdiction in a Federal court is asserted to depend upon diversity of citizenship, and if the requisite citizenship is anywhere expressly averred in the record, or facts are therein stated which in legal intendment constitute such allegations, that is sufficient."

Thus, the whole record may be looked to for the purpose of curing a defective averment. The requisite jurisdictional amount in controversy was averred in the Complaint and evidence was offered at the May 8, 1979 hearing in support of the averment. A pre-trial order if submitted would supersede the pleadings under Oregon U. S. District Court Rules and based upon the entire record been likely to cure such defect.

■■ This is an action which could have been brought in the federal courts had the bankruptcy proceedings not been instituted. Section 23 concerns itself with the distribution between state and federal courts not with the form of proceeding (see discussion supra). Section 2a(7) and Bankruptcy Rule 915 are controlling as to the procedural form of the proceeding and Defendant's failure to object to the summary form of the proceeding within the time allowed for answer or motion, or even within a reasonable time thereafter, is, pursuant to the clear terms of those provisions, consent to that form of proceeding.

## DEFENDANT'S RULE 60 CONTENTIONS

Defendant's contentions in support of his first basis for vacating the Order of Default, as set out in the Memorandum attached to the Motion For Relief From Judgment, are founded on Rule 60(b)(4) F.R.C.P. Rule 60(b)(4) provides that on motion and upon such terms as are just, the Court may relieve a party from a final judgment, or-

der, or proceeding for the reason that the judgment is void. Defendant asserts that the Court lacked jurisdiction of the subject matter of this proceeding thereby rendering the Default Judgment void.

The United States Supreme Court, in *Chicot Co. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376–377, 60 S.Ct. 317, 84 L.Ed. 329 (1940), addressed the issue of the void or voidable nature of a judgment, rendered by a district court sitting in bankruptcy, as it relates to that court's determination of its jurisdiction over the subject matter. The court stated:

> "In the early case of *McCormick v. Sullivant*, 10 Wheat. 192, 6 L.Ed. 300, where it was contended that the decree of the federal district court did not show that the parties to the proceedings were citizens of different States and hence that the suit was coram non judice and the decree void, this Court said: 'But this reason proceeds upon an incorrect view of the character and jurisdiction of the inferior courts of the United States. They are all of limited jurisdiction; but they are not, on that account, inferior courts, in the technical sense of those words, whose judgments, taken alone, are to be disregarded. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error or appeal, be reversed for that cause. But they are not absolute nullities'. (Citations omitted). This rule applies equally to the decrees of the District Court sitting in bankruptcy, that is, purporting to act under a statute of Congress passed in the exercise of the bankruptcy power. The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action. *Stoll v. Gottlieb*, 305 U.S. 165, 171, 172, 59 S.Ct. 134, 83 L.Ed. 104."

■ A federal district court, or a court of general jurisdiction, normally has such jurisdiction, i. e., the power to determine its jurisdiction over the subject matter whenever it is possessed of the requisite jurisdic-

tion over the parties or res that is warranted by the type of judgment entered. *Chicot Co. Drainage Dist. v. Baxter State Bank,* Id. at 376, 60 S.Ct. 317. Thus, while a "court does not have the power, by judicial fiat, to extend its jurisdiction over matters beyond the scope of authority granted to it by its creators" there "must be admitted, however, a power to interpret the language of the jurisdictional instrument and its application to an issue before the court" *Stoll v. Gottlieb,* supra, 305 U.S. at 171, 59 S.Ct. 134, 137.

■ A federal court dealing with a matter of bankruptcy may acquire jurisdiction over the subject matter of a controversy by consent based on §§ 2a(7) and 23(b) of the Bankruptcy Act (see discussion infra) and Bankruptcy Rule 915(a). Judgments rendered by such courts are thus, legally effective, i. e., valid under principles that are applicable for the determination of valid, as distinguished from void, judgments and are not subject to collateral attack on the ground that the court lacked federal jurisdiction.

■ President Chavez of Defendant corporation was duly served with Summons and Complaint. The record reveals that Defendant had actual notice prior to the taking of the Default Judgment so due process is satisfied and the Judgment is not void on that basis.

Defendant offers as a second basis for its Motion For Relief From Judgment Rule 60(b)(1) and (6) of the F.R.C.P. The memorandum submitted with Defendant's Motion requests relief for Defendant's "mistake, inadvertence, surprise, or excusable neglect" pursuant to Rule 60(b)(1).

■ While the general rule is that a person may not excuse his breaches of duty on the ground that the negligence was that of his agent, whatever his remedies against the agent, courts have shown considerable sympathy for the plight of the diligent litigant with an incompetent or sloppy lawyer. *L. P. Steuart, Inc. v. Matthews,* 117 U.S. App.D.C. 279, 329 F.2d 234 (D.C.Cir., 1964). The question presented on a motion for 60(b) relief is whether the conduct is excusable neglect. Obviously the greater the negligence involved, or the more willful the conduct, the less "excusable" it is. However, the more inexcusable it is, the greater the sympathy with the victim. Some courts have resolved this dilemma by treating "gross" negligence by counsel as constituting special circumstances taking the case out of clause (1) and affording relief under clause (6). *King v. Mordowanec,* 46 F.R.D. 474 (D.C.R.I., 1969). This Court finds that the testimony offered at the hearing on Defendant's motion is not persuasive that there was excusable neglect under the contemplation of Rule 60(b)(1). Plaintiff's attorney wrote letters included in the record plainly advising Defendant's president of the jeopardy of default.

■ However, determination as to whether default or default judgment shall be set aside rests on the sound discretion of the trial court. *Madsen v. Bumb,* 419 F.2d 4, (9th Cir., 1969). Such determination must consider for the particular case whether the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments, and whether there is merit in the defense. Vol. 7, *Collier on Bankruptcy,* ¶ 60.19, 238, 14th Ed. Motions for relief under Rule 60(b) must be made in good faith and within a reasonable time. Supplementing the reason for relief, the moving party must ordinarily assert a meritorious claim or defense. The trial court's exercise of discretion will not be set aside except for abuse. Id. at 351–352.

■ The discretion afforded the court in granting or denying a motion to vacate a default judgment must be exercised with reference to three important considerations, first, the fact that the governing rule (60(b)) is remedial in nature and, therefore must be liberally applied; second, by the fact that default judgments are generally disfavored; and third, by the fact that doubt should be resolved in favor of motion to set aside judgments so that cases may be decided on their merits when relief sought is timely, and movant has a meritorious

defense. *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir., 1974). In *Schwab* the court reversed the district court's order denying a motion under Rule 60(b)(6) to vacate a $540,000 default judgment and emphasized that the record was devoid of any suggestion that plaintiff would be prejudiced if the motion were granted. Id. at 356. Thus, courts are reluctant to deny a party its day in court by refusing to vacate a judgment taken by default when they can do so without prejudice to the opposing party. The imposition of reasonable conditions in granting a motion for 60(b) relief can be utilized to alleviate prejudice resulting from vacation (see discussion infra).

Plaintiff cites *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) as the position of the United States Supreme Court that the neglect of an attorney is to be treated as the neglect of a party, and the client's remedy is a suit for malpractice. *Link* did not involve a motion for relief under 60(b), and expressly left open the question of whether under appropriate circumstances 60(b) relief could be obtained. Id. at 635–636, 82 S.Ct. 1386.

 However, Rule 60(b)(6) should be liberally applied to accomplish justice, and when a case is properly within clause (6) the court has broad legal discretion to grant or deny relief in light of all the relevant circumstances, although clause (6) is a residual clause to be invoked only on the basis of some reason other than those specified in the preceding clauses (1)–(5). *Transit Cas. Co. v. Security Trust Co.*, 441 F.2d 788 (5th Cir., 1971). Clause (6) does not confer a discretionary dispensing power upon the court to grant relief on the basis of any reason enumerated in the preceding clauses, although when the motion is timely, (i. e., within the one year limitation on clauses (1)–(3), as is the case here) it is not crucial to determine whether the reason is contained in any of the preceding clauses, and attention may be focused on a determination as to whether the reason justifies relief. *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 684, 93 L.Ed. 266 (1943). It is well settled that relief under clause (6) may be granted in unusual and exceptional cases only. "Extraordinary circumstances" must exist to justify the exceptional relief afforded by clause (6). Extraordinary circumstances must be fully substantiated by adequate proof. *Carrethers v. St. Louis-San Francisco R. Co.*, 264 F.Supp. 171 (D.C. Okl., 1967). Examples of combinations of circumstances which rise to the stature of extraordinary include: *Fleming v. Mante* (D.C.Ohio, 1950) 10 F.R.D. 391; and *Lucas v. Juneau* (D.C.Alaska, 1957) 20 F.R.D. 407.

 In the case at bar, the balancing of the competing principals of finality of judgments against the resolution of issues on their substantive merits requires examination of defendant's evidence of a meritorious defense if given an opportunity to litigate. The substantial sum in controversy is also to be considered.

The fact that Defendant was diligent in seeking relief from the Default Judgment tends to support Mr. Chavez' contentions that he assumed Mr. Plooster was actively representing Defendant's interests. The explanation offered by Mr. Plooster's affidavit falls short of excusing his negligence in the matter. However, whether Mr. Plooster's conduct rises to "gross neglect" and whether Mr. Chavez, as President of Defendant Corporation, can be said to be free from contributory neglect is questionable. Plaintiffs presented evidence of their clear intention to seek a default if Defendant did not appear, and given the most favorable treatment, Defendant president's testimony is supportive of a belief of continuing negotiations. It is also apparent, however, that Plaintiffs were aware that Defendant had expressed intention to interpose a defense in the matter. Mr. Chavez is not a naive or incapacitated party, incapable of vigilant attendance to a matter of significance. Although this is not the classic case of "extraordinary circumstances" justifying relief under 60(b)(6), the broad discretion afforded the Court under the Rule gives the Court here some latitude if it feels relief from the Default Judgment is appropriate.

■ In granting a motion to vacate a default judgment the court may impose reasonable conditions. Rule 60(b) provides for relief "upon such terms as are just". *Thorpe v. Thorpe*, 124 U.S.App.D.C. 299, 364 F.2d 692 (D.C.Cir., 1966). Rarely, however, have the federal courts had occasion to discuss what those terms might be. The condition most commonly imposed is that the defendant reimburse the plaintiff for costs—typically court costs and attorney's fees—incurred because of the default. *Morissee v. Defensive Instruments, Inc.*, 55 F.R.D. 433 (D.C.Wis., 1972). This condition usually obtains in the absence of prejudice over and above costs customarily incident to pressing a default. Imposition of conditions in an order vacating a default is a device frequently used to mitigate any prejudice which plaintiff may suffer by allowing defendant to plead. *Littlefield v. Walt Flanagan and Co.*, 498 F.2d 1133, 1136 (10th Cir., 1974). When an extraordinary condition imposed in vacating a default judgment is approved, it must be accompanied by supporting findings to show that it represents a reasonable exercise of discretion. *Thorpe*, supra, 124 U.S.App.D.C. at 302, 364 F.2d at 695. Terms and conditions will not be disturbed on appeal as long as they do not constitute an abuse of the court's broad discretion under Rule 60(b).

The Court concludes that the Defendant may be relieved from the Default and Judgment thereon on the following terms:

1. That this Court retain jurisdiction and will make disposition of the litigation as appropriate.

2. That a responsive pleading be filed within 20 days of the date hereof with this Court.

3. That because the Plaintiff has by the Defendant's conduct been caused expenses of delay, attorney fees and costs, that bond or other approved security in the amount of $2,500 accompany Defendant's pleading to satisfy such costs as may be fixed.

Findings of Fact, Conclusions of Law and separate Order consistent herewith are entered contemporaneously with this Opinion.