In re JOHNSON & MORGAN CONTRACTORS, Debtor.

C.I.T. CORPORATION, Plaintiff,

v.

JOHNSON & MORGAN CONTRACTORS, Defendant.

Bankruptcy No. 1-81-00751.
Adv. No. 1-81-0490.

United States Bankruptcy Court,
M.D. Pennsylvania.

May 6, 1983.

Edward W. Rothman, McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiff.

Carl A. Belin, Benin, Belin & Naddeo, Clearfield, Pa., for defendant.

## MEMORANDUM AND ORDER

ROBERT J. WOODSIDE, Bankruptcy Judge.

On January 20, 1983, Johnson & Morgan Contractors (debtor) filed a "Motion for Relief from Order of Court." Debtor's motion requests injunctive relief from the enforcement of remedies made available to C.I.T. Corporation (plaintiff) by the parties' stipulation which was approved by Bankruptcy Judge Thomas Wood's Order of Judgment entered on December 10, 1982 (December Order). The parties' stipulation was to terminate an adversary action for relief from the automatic stay and the stipulation was incorporated by reference into the December Order for approval.

The issue before us is whether that final December Order can be modified because of unforeseen circumstances under Rule 60(b)(6) of the Federal Rules of Civil Procedure. We held a hearing on the debtor's motion on January 20, 1983.

On August 4, 1981, the debtors filed a petition in bankruptcy. Subsequently, on September 8, 1981, the plaintiff sought relief from the automatic stay. In settlement of that adversary action, the debtor and plaintiff entered into the stipulation of agreement in question which was incorpo-

rated by reference into the December Order approving the termination of the adversary proceeding.[1] The terms of the stipulation relevant to this proceeding are paraphrased as quoted from plaintiff's memorandum, pages 2 and 3, as follows:

(1) Paragraph 1 and 2 require the debtor to make monthly payments to plaintiff of $12,500.00 commencing December 1, 1981.[2]

(2) Paragraph 7 provides that debtor shall be in default under the Order if a monthly payment is not made within 15 days after it is due;

(3) Paragraph 7 further provides that in the event of default, "the automatic stay" of section 362(a) of the Bankruptcy Code shall be automatically vacated and terminated without further order of the Bankruptcy Court, and Plaintiff shall have the right to immediately repossess the equipment subject to its security interest and exercise its rights under the agreements reflected in . . . the complaint filed in (the) adversary proceeding and in accordance with the provisions of the Uniform Commercial Code;

(4) Paragraph 8 provides that the agents, servants, employees, representatives, and partners of defendant may not interfere with the implementation of any provisions of the Order, including the interference with the rights of plaintiff to repossess the equipment upon default; and

(5) Paragraph 9 provides that defendant recognizes the necessity of strict compliance with the terms of the Order.

Since the stipulation was entered into the debtor has made payments amounting to $166,666.68, it only missed two payments: (1) the entire $12,500 owed in December of 1982 is delinquent; and (2) it made only a partial payment of $4,166.67 in January of 1983. Nevertheless, due to the delinquencies, the plaintiff seeks to repossess two pieces of heavy equipment which are both used in the debtor's mining operations.

Both pieces of equipment are being maintained in good condition and no recent depreciation has occurred. Due to the lack of demand for coal, neither piece of equipment has been in significant use over the last few months prior to this hearing. However, the scraper is necessary for mining reclamation projects scheduled for this spring and the front loader is necessary for general mining operations. The model 988–B Caterpillar, front loader, has a fair market value of $85,000. The Model 333–T Scraper is no longer manufactured and therefore has only a wholesale value of $30,000.

The debtor's production of coal dropped drastically due to the unexpected decreased demand for coal. Normally the debtor had sold coal in the tonage range of 13,000 to 18,000 per month, but that dropped to 6,000 tons per month in the months preceding its default under the stipulation. The unexpected downturn in the coal market resulted from a variety of factors: the unseasonably cool summer and unusually warm winter; a lower worldwide demand for coal occurring as Poland dumped coal onto the market; a 40% drop in steel production; and foreign exporters competing in the do-

1. As is often the case, a number of other adversary proceedings were filed by various secured creditors and were settled under similar terms as found in this case. Debtor in its brief in pointing out that no other creditor was objecting to reduced payments listed them as follows: Dresser Leasing Corporation, adversary 1–82–0011; Clark Equipment Credit Corporation, adversary 1–81–0544; General Motors Acceptance Corporation, adversary 1–81–0613; Westinghouse Credit Corporation, adversary 1–81–0629; Associates Commercial Corporation, adversary 1–81–0494; and Clearfield Bituminous Coal Corporation, adversary 1–81–0611 and 1–82–0426.

2. The $12,500 payable to plaintiff was divided between its Pittsburgh office and its Philadelphia office. The Pittsburgh office received about $3,900 per month and the rest went to the Philadelphia office. The Pittsburgh office decided to exercise its rights under the December order and repossess the two pieces of equipment subject to the security interest being administered by that office. The Philadelphia office elected not to repossess the equipment subject to the security interest being administered by that office.

mestic market. At the time, the debtors' office manager and executives advised the debtor to enter into the stipulation to terminate the adversary proceeding, they believed that their coal market was stable and the demand for coal would stay in the 13,000 to 18,000 ton per month range.

## DISCUSSION

Bankruptcy Rule 924 makes Rule 60 of the Federal Rules of Civil Procedure applicable in bankruptcy cases. The issue in this case is whether the debtor can have relief from our prior December Order under Rule 60(b) of the Federal Rules of Civil Procedure which provides for relief in pertinent part as follows:

Rule 60, Relief from Judgment or Order

(B) On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: .... (6) any other reason justifying relief from the operation of the judgment.

As can be expected plaintiff cites cases which set forth rigid standards for a court in reviewing an order under Rule 60(b)(6) of the Federal Rules of Civil Procedure and requires the party seeking relief to establish "extraordinary circumstances" or "extreme hardship."

■ Debtor on the other hand cites the case of *In Re Dunkalec,* 21 B.R. 618 (Bkrtcy. E.D.Pa., 1982) which sets forth the liberal approach of review:

In addressing this issue, we must first confront the question concerning the power of this Court to vacate an Order which is res judicata. *In Re Burley,* 11 B.R. 369 (Bkrtcy.C.D.Cal.1981) held that it is well established that the Bankruptcy Court as a court of equity, has the power to vacate an order or decree.

That power is inherent in the jurisdiction of the chancery and is explicitly defined in F.R.Civ.P. 60. The exercise of that power lies within the discretion of the trial court, guided by traditional principles of equity jurisprudence. In simple English, the language of the "other reason" clause (60)(b)(6)) vests

power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice. Id. at 373.

In Addition, not only does the Bankruptcy Court have the power to vacate a final judgment but also may exercise this power very liberally. The only criteria necessary is to "accomplish justice." Specifically, "Rule 60(b)(6) should be liberally applied to accomplish justice and when a cause is properly within clause (6), the Court has broad legal discretion to grant or deny relief in light of the relevant circumstances ...." *In Re Ireco Industries, Inc.,* 2 B.R. 76, 84 (Bkrtcy.D.Or. 1979). In short, Rule 60(b)(6) is a reservoir of equitable power to do justice in particular cases where relief is warranted. *Matter of Smith,* 3 B.R. 224 (Bkrtcy. E.D.Va.1980). Unquestionably, therefore, it is well within the jurisdictional ambit of the Court to vacate an order or decree which is res judicata."

*In Re Durkalec,* 21 B.R. 618, 619–20 (Bkrtcy.E.D.Pa.1981). This Court feels that the above approach as set forth in the *Dunkalec* case is the proper one and herewith adopts it. The Court feels that such an approach is particularly necessary and important when reviewing orders issued in a Chapter 11 case which require continuing conduct of the Debtor-In-Possession and on which the success or failure of the rehabilitation might depend.

■ Even if we were to use the standard that there must be a finding of an unusual circumstance for the debtor to be entitled to relief, we would have no difficulty in so finding in this case. Although the bank argues that everyone knew that the economy was recessionary, the debtor reasonably believed that the demand for its coal was stable. The debtor was able to fulfill the terms of the stipulation agreement for quite sometime prior to its default. The unseasonably warm winter, foreign export competition, and deflationary oil prices, which drove down the demand for coal, taken together were not foreseeable consequences for a relatively small domestic coal mining operation, not usually so adversely affected by such factors.

We further find that the equipment is necessary for the debtor's effective reorganization. The scraper is necessary for mandatory reclamation work which is an integral part of the debtor's mining operation. Similarly, the loader is also a fundamental tool for a mining operation. We conclude that to allow plaintiff to repossess the equipment would result in irreparable harm to the debtor's reorganization efforts. Therefore, we grant a preliminary injunction against plaintiff barring it from exercising its remedies under the December Order.

Despite the fact that we are granting an injunction at this time the court feels that to "accomplish justice" it should hold a hearing in the near future to review the merits of continuing that injunction. The Debtor is to file a plan by June 1, 1983, and an appropriate time to hold such a hearing would be some time during June after Plaintiff has an opportunity to review the plan.

An appropriate order will be entered.