**In the Matter of Jeff Alexander SMITH, Bankrupt.**

**Margaret MAHONEY, Plaintiff,**

v.

**Jeff Alexander SMITH, Defendant.**

**Bankruptcy No. 79–701–A.**

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

March 14, 1980.

Gregory E. Stambaugh, Alexandria, Va., for plaintiff.

George F. Bason, Jr., Washington, D. C., Charles B. Sullivan, Arlington, Va., for defendant/bankrupt.

Bennett A. Brown, Fairfax, Va., trustee in bankruptcy.

## MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

Trial was held on this matter on January 18, 1980, based upon a Complaint filed by the plaintiff, Margaret Mahoney, to ascertain the dischargeability of certain debts and counsel fees reduced to Final Judgment by the Superior Court for the District of Columbia, dated November 15, 1978, pursuant to the provisions of Section 17a(7) of the Bankruptcy Act (11 U.S.C. § 35(a)(7)).

Before proceeding to resolve the issues raised in the pending case, it may be best to establish the factual history of the instant matter as set forth in three judgments entered by the Superior Court for the District of Columbia between February 1974 and December 1978.

The chronology is as follows:

Plaintiff sought a Judgment of Limited Divorce which came on for trial on January 24, 1974, before the Domestic Relations Branch of the Family Division of the Superior Court for the District of Columbia. The judgment, granting a limited divorce, was entered on February 20, 1974.

Plaintiff and defendant-bankrupt, Jeff Alexander Smith, were married on August 7, 1971. No children were born of the marriage. The parties separated from each other on or about February 10, 1973.

The Superior Court found that while the plaintiff earned only about $90.00 per week when working full time, defendant received $741.00 per month whether he worked or not. Defendant was capable of working and, in fact, did so to earn extra income, whereas the plaintiff was incapable of working full time due to poor health. The court awarded the plaintiff $50.00 per month as separate maintenance and support to be paid to her by the defendant.

The Superior Court determined that the parties had incurred various debts, to wit: "joint or joint-and-several obligations for loans and purchases of merchandise, all of which have inured to the sole benefit of defendant." The Court also determined that "as between plaintiff and defendant, plaintiff should not be required to bear the burden of any future payments on any of the said joint or joint-and-several obligations." In addition, the court awarded the plaintiff counsel fees in the amount of $1,200.00. Provision was made for the division of personal property as between the parties. The Order of the Superior Court also required the defendant to support the plaintiff by awarding her an "additional amount, if any, as may be needed to reimburse plaintiff for any payments which she may hereafter from time-to-time be required to make on account of any joint or joint-and-several obligations heretofore incurred by the parties."

The decree of limited divorce was enlarged to an *a vinculo* decree by the Superior Court on December 30, 1975. The court made a further award to the plaintiff of counsel fees in the amount of $250.00 but decreed that she was not entitled to alimony. The *a vinculo* decree entered by the court was silent on the issue of payment by defendant to reimburse plaintiff on any future payments pertaining to joint or joint-and-several obligations previously incurred by the parties.

On April 14, 1978, plaintiff filed a motion with the Superior Court seeking, among other things, to correct or modify the decree and for additional counsel fees. A hearing was held before the Superior Court on June 28, 1978.

The Superior Court entered a Judgment Order on November 15, 1978, granting plaintiff's motion with the exception of awarding plaintiff's counsel additional fees. It is the various provisions as set forth in said November 15th order which bring this controversy before this Court for resolution.

█ A discharge in bankruptcy releases the bankrupt from all provable debts, except those which the Court determines to be liabilities "for alimony due or to become due, or for maintenance or support of [the] wife . . . ." 11 U.S.C. § 35(a)(7). The public policy rationale which led to the enactment of this section rested on the belief that alimony, whether due or not, was not a

debt in the legal sense, but rather the enforcement of a marital duty. *Westmorland v. Dodd*, 2 F.2d 212 (5th Cir. 1924). The term "alimony" as applied to Section 35(a)(7) means payment in the nature of maintenance or support for the former spouse. *Nichols v. Hensler*, 528 F.2d 304, 308 (7th Cir. 1976). The principal difficulty encountered by the Court in enforcing this section is in making a determination as to what constitutes alimony by way of maintenance or support.

■ Congress amended the Bankruptcy Act in 1970 to increase the jurisdiction of the Bankruptcy Courts. 11 U.S.C.A. § 11(a)(12) (Cum.Supp.1979).[1] This enlargement of jurisdiction was meant "to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors." H.R.Rep.No.91–1502, 91st Cong. 2d Sess. 2 (1970), U.S.Code Cong. & Admin.News 1970, p. 4156. Although the issue of dischargeability under Section 35(a)(7) must ultimately be one for resolution by the Court applying federal law within the meaning of the statute, the local law, in this case that of the District of Columbia, must be examined in order to determine what constitutes support, maintenance or alimony. *See Waller v. Waller*, 494 F.2d 447, 448 (6th Cir. 1974).

The record before the Court in the pending case presents two principal issues which must be resolved: (1) whether the Superior Court's decree requiring defendant to pay prior joint-and-several obligations constitutes alimony; (2) whether the awarding of counsel fees by the Superior Court constitutes alimony. Before these issues may be considered, however, the Court must determine whether the Superior Court's Judgment Order of November 15, 1978, which purports to correct or modify a final decree of divorce entered by the Superior Court on December 30, 1975, may be given full legal effect.

Although the District of Columbia Court of Appeals has recently recognized the issue of whether alimony once denied in a decree of final divorce may be revived in a subsequent proceeding, it has refused to determine the issue on the grounds that the issue was not properly before the court. This reluctance on the Court of Appeals' part was most recently demonstrated in *Wright v. Wright*, 386 A.2d 1191, 1194 n.9 (D.C.App. 1978), where the court in a footnote observed: "[b]ecause Mrs. Wright has not appealed the trial court's denial of alimony, we need not consider whether that denial constituted, in effect, a modification for which separate findings are required."

In another recent decision, the Court of Appeals did overturn and vacate a Superior Court ruling which held that in view of the fact that the subject of alimony, or a reservation thereof, was not alluded to in a property settlement agreement, the wife was forever foreclosed from claiming alimony. *Smith v. Smith*, 310 A.2d 229, 230–31 (D.C.App.1973). The *Smith* court, however, based its decision on the belief that the Superior Court, in making its ruling on the alimony issue, had rendered an advisory opinion. In dicta, the court observed that a determination of the wife's alimony rights would have been a justiciable issue if she had sought alimony in a specific amount. *Id.* at 231.

Several early decisions by the District of Columbia Court of Appeals acknowledge that once an order granting a divorce is entered which allows an award of alimony, the court necessarily retains jurisdiction over the "parties and the cause with authority to enter further and additional orders respecting the alimony of the wife . . . ." *Davis v. Davis*, 61 App.D.C. 48, 50, 57 F.2d 414, 416 (D.C.App.1932). *See Trotter v. Trotter*, 87 U.S.App.D.C. 213, 183 F.2d 997 (D.C.App.1950). This jurisdiction continues until such time as the court's orders and decrees are made effective in the determination of the issue. *See Elkins v. Elkins*, 55 App.D.C. 9, 12, 299 F. 690, 693 (D.C.App.1924).

By statute, the District of Columbia codified the decision reached by the Court of Appeals as expressed in *Davis v. Davis*,

---

1. The defendant filed a petition in bankruptcy on June 29, 1979.

*supra.* Title 16, Section 913, D.C.Code (Supp. V 1976) states in pertinent part: "after a decree of divorce in any case granting alimony . . . the case shall still be considered open for any future orders in those respects." The predecessor statute to this section, Title 16, Section 413, D.C.Code 1940, was construed by the District of Columbia Court of Appeals in *Heckman v. Heckman*, 83 F.Supp. 687 (D.C.1949). *Heckman* involved court approval of a property settlement which was incorporated in a judgment of absolute divorce that provided for a complete settlement of the parties "respective property rights and 'all claims for alimony, etc.'" *Id.* at 688. The wife thereafter sought an increase in the allotment made to her. The husband opposed the wife's action on the grounds that the court no longer retained jurisdiction as to the issue of alimony. He asserted the position that the court confirmed the agreement as a contractual matter, not as alimony.

▪ The court in *Heckman* required that for alimony to be granted after a decree of divorce, it must appear that the applicable statute in the decree was not only intended to grant such a right, but that the moving party was in full compliance with the terms of the statute. 83 F.Supp. at 688. A statute which authorizes the modification of decrees granting alimony is generally held not to authorize an award of alimony after a judgment of final divorce which denies alimony. The *Heckman* court held that a statute which permits the modification of an alimony award made in a final decree of divorce does not authorize the trial court to insert a subsequent provision for alimony in such a final decree of divorce which is silent on the issue. *Id.* The rationale behind this position is that the court, in granting an initial award of alimony in a subsequent decree, had nothing to modify when no award of alimony was made in the original decree.[2]

The District of Columbia Court of Appeals in *Jackson v. Jackson*, 200 A.2d 380 (D.C.App.1964), construed a Maryland decree of divorce which neither made a provision for alimony nor a reservation thereof, for the wife. The court held that the effect of the decree was "to relieve the husband of the obligation to support his wife." *Id.* at 382. The *Jackson* court found that the judgment of the Maryland court, which had jurisdiction to enter an order of final divorce as between the parties, accordingly must be given full faith and credit in the District of Columbia.

If the resolution of this issue was confined to the rationale enunciated by the *Heckman-Jackson* line of cases, the Court ordinarily would be constrained to find that the Superior Court did not have jurisdiction to enter its Judgment Order of November 15, 1978. The Court takes cognizance of an exception to the general rule stated in *Heckman* that "when alimony is omitted from a decree, it cannot thereafter be allowed . . . ." 83 F.Supp. 687, 688 (D.C.App.1949). The *Heckman* court observed that this rule would apply "at least in the absence of fraud or mistake." *Id.*

Apparently, the exception first expressed in *Heckman* has been broadened and established as a rule of the Superior Court for the District of Columbia. Domestic Relations Court Rule 60 applies Superior Court Rule Civil 60 to domestic relations cases. The Advisory Committee Comment following S.C.R. Civil 60 states that the Rule is identical (with one exception not applicable herein) to Federal Rule of Civil Procedure 60. Unless there exist District of Columbia decisions to the contrary, the Court believes that general principles explaining or construing Fed.R.Civ.Proc. 60 may be applied in the instant matter.

Plaintiff filed a supplemental memorandum in the Superior Court in support of her

---

2. In support of its position, the *Heckman* court referred favorably to a decision by the Court of Appeals of Maryland, *Marshall v. Marshall*, 162 Md. 116, 159 A. 260 (1932), where that court enunciated the rule that the right of a spouse to claim alimony was extinguished at the time of the severance of the marital relationship. 83 F.Supp. at 688, n.2. This view has come under recent criticism by the Maryland Court of Appeals in *Altman v. Altman*, 282 Md. 483, 386 A.2d 766, 771 (1978).

motion to correct or modify the judgment of absolute divorce on July 10, 1978. In said memorandum, plaintiff asserted several theories in support of her position that the December 1975 Judgment of Absolute Divorce did not supersede any other Orders in the matter. It was the plaintiff's position that the failure of the Superior Court to incorporate the pre-existing reimbursement order of the February 1974 Judgment of Limited Divorce was the result of oversight, and was not a considered decision by the court. Therefore, that portion of the February 1974 judgment relating to the question of reimbursement was not extinguished by the December 1975 Judgment of Absolute Divorce.

Applying S.C.R. Civil 60(a), plaintiff argued that " 'oversight or omission may be corrected by the court *at any time.*' (Rule 60(a); emphasis added.)". Plaintiff further argued that "the one-year limitation relied upon by defendant applie[d] only to motions under Rule 60(b)(1), (2) and (3), and not to motions under Rule 60(a) or Rule 60(b)(6)— 'any other reason justifying relief from the operation of the judgment.' ".

The November 1978 order granting final judgment did not expressly state whether the Court was basing its decision on S.C.R. Civil 60(a) or 60(b)(6). As part of its findings of fact, the Superior Court noted that pursuant to its February 1974 Order, the defendant was to reimburse plaintiff for any sums expended by her on the parties' joint or joint-and-several obligations. Inasmuch as no such additional amounts arose between the February 1974 Order and the December 1975 Order, and through oversight, this provision was not incorporated into the latter Order. Subsequent to the entry of the December 1975 Order, plaintiff had two judgments totalling $1,359.67 rendered against her "on account of the parties' joint or joint-and-several obligations." Based upon these findings of fact, the Superior Court granted plaintiff a Judgment Order against the defendant in the amount of $2,224.67 "for unpaid and overdue alimony, including counsel fees, and prior joint or joint-and-several obligations. . . ."

In *Ohio Valley Construction Co., Inc. v. Dew*, 354 A.2d 518, 521 (D.C.App.1976), the court recognized that relief was appropriate under S.C.R. Civil 60 for extraordinary or unusual occurrences which justify "an exception to the overriding policy of finality." The decision to grant or deny a motion under Rule 60(b)(6) must lie with the sound discretion of the trial court. *Jones v. Hunt*, 298 A.2d 220, 221 (D.C.App.1972).

The principal purpose of Rule 60(b)(6) is to cover unforeseen contingencies. The trial court has the authority to grant relief from a judgment, whenever, after considering all the relevant circumstances, such an action is deemed appropriate in the furtherance of justice. See *Klapprott v. United States*, 335 U.S. 601, 614, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949). It has been stated that Clause (6) of Federal Rule 60(b):

> "is a reservoir of equitable power to do justice in particular cases when relief is not warranted, or it is uncertain whether relief is warranted, by the preceding clauses but the motion is timely and the reason justifies relief."

Moore's Federal Practice & Procedure Manual, § 26.109 (1978).

Having considered the relevant circumstances surrounding the instant matter, the Court is of the opinion that the Superior Court acted properly when that court reinstated the reimbursement order originally set forth in the February 1974 Judgment of Limited Divorce. The Court finds that plaintiff was merely an accommodation co-signer on the parties' joint or joint-and-several obligations. The Court finds further that the judgments against her were rendered after the December 1975 Order was entered and, as such, constituted unforeseen contingencies requiring relief as prescribed by the Superior Court. The Court believes such relief to be particularly applicable inasmuch as the plaintiff was not aware of the continuing existence of these debts following the entry of the February 1974 Order.

The Court must presently consider whether the prior joint or joint-and-several

obligations and counsel fees awarded by the Superior Court in the amount of $2,224.67 are dischargeable debts under Section 17a(7) of the Bankruptcy Act (11 U.S.C. § 35(a)(7)).

 Having determined that the November 15, 1978, Superior Court Judgment Order is valid, the Court must resolve whether the award of "$1,359.67 on account of the two judgments subsequently rendered against plaintiff arising from the parties' prior joint or joint-and-several obligations" was intended as a property settlement or as alimony. It is incumbent upon the Court to examine carefully and look behind the divorce judgment to determine the essential nature of the plaintiff's claim for the purposes of discharge in bankruptcy under Section 17a(7) of the Bankruptcy Act (11 U.S.C. § 35(a)(7)). *Hylek v. Hylek*, 148 F.2d 300 (7th Cir. 1945). Clearly, while alimony payments are nondischargeable, property settlements are dischargeable. The fact that support agreements are denominated as "property settlements" rather than alimony is not dispositive of the issue of dischargeability. Rather, it is the basis for which the obligation was created which determines whether the court intended an equalization of property rights or for support and maintenance. *In re Wood*, 561 F.2d 27 (7th Cir. 1977).

In the instant matter, defendant asserts that the judgment in the amount of $1,359.67 was for debts incurred both by the plaintiff and defendant, and it was not the intention of the Superior Court to allow plaintiff alimony in any form. The import of the defendant's argument is that the intent of the divorce judgment was to accomplish a division of property which required the defendant to pay community debts as part of the divorce judgment. The Court believes that defendant takes too narrow a view as to what constitutes property. The Court of Appeals for the District of Columbia has liberally construed the term "property" with respect to meeting the reasonable and necessary needs of the wife. *E. g., Schlaefer v. Schlaefer*, 71 App. D.C. 350, 112 F.2d 177 (D.C.App.1940).

The Sixth Circuit in *Waller v. Waller*, 494 F.2d 447, 451 (6th Cir. 1974) held that an ex-husband's obligation to his ex-wife which was incorporated in a divorce decree "to 'pay and indemnify and hold the wife absolutely harmless from all existing obligations' constituted alimony, maintenance and support for the wife," and hence was not a debt dischargeable in bankruptcy, even though the award to the wife was not specifically designated as alimony. Likewise, in *Poolman v. Poolman*, 289 F.2d 332 (8th Cir. 1961), the Eighth Circuit found nondischargeable a debt enforced by a state court judgment against a husband whereby, under the terms of a property settlement, he was to make certain payments on a note secured by a deed of trust on the family residence which the wife had been awarded. The court found an obligation on the husband's part to maintain and support a family which "includes the obligation to keep a roof over their heads." *Id.* at 335.

The District Court for the District of Nebraska in *In re Baldwin*, 250 F.Supp. 533 (D.Neb.1966) followed the rule enunciated in *Poolman*. The court in *Baldwin* noted that while household furniture and an automobile "may not be quite so basic as a roof over the wife's head, they partake of the same nature." *Id.* at 534. The court rejected the bankrupt's contention that Congress intended a distinction to be made "between an obligation to make direct alimony and/or support payments in cash or property to a divorced wife and the obligation to make payments on loans secured by marital property." *Id.*

 That a husband owes a duty and obligation to provide maintenance and support for his wife is a principle of long standing. In *Wetmore v. Markoe*, 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904), the Supreme Court observed:

"Unless positively required by direct enactment the courts should not presume a design upon the Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife . . . . ."

In the February 1974 Judgment of Limited Divorce, the Superior Court directed that defendant make support payments in the amount of $50.00 per month and, in addition, to provide the plaintiff with such additional amounts as may be needed to reimburse her on account of any prior joint or joint-and-several obligations incurred by the parties. The November 15, 1978, Judgment Order revives this latter requirement. It is apparent that this reimbursement provision was but an extension of the original payments required to be met by defendant pursuant to the February 1974 Order. While the December 1975 Order extinguished defendant's obligation to make monthly payments to plaintiff, the intent of the Court for defendant to make future reimbursement payments was not vitiated. *See cf Wright v. Wright*, 386 A.2d 1191, 1194 (D.C.App.1978).

█ Having weighed carefully all the relevant factors in the instant case, the Court must conclude that the reimbursement of prior joint or joint-and-several obligations ordered by the Superior Court in its November 15, 1978, Judgment Order may be likened to and has the effect of alimony. The Court also finds that the public "policy considerations underlying the bankrupt's discharge and his right to a 'fresh start'" are outweighed by the factors hereinabove discussed in the instant matter. *See In re Dirks, Dirks v. Dirks*, Bankruptcy No. 77–00001 (D.D.C. July 12, 1977).

The remaining issue to be resolved deals with the dischargeability of attorney fees awarded by the Superior Court in its November 1978 Judgment Order in the amount of $865.00. Defendant asserts that counsel fees awarded to plaintiff's counsel cannot constitute alimony. The Court is not persuaded by the defendant's contention.

█ It is the general rule that counsel fees awarded in a divorce case may be equated with alimony and, as such, are not dischargeable in bankruptcy. The weight and authority of case decisions support this view. *E. g., In re Birdseye*, 548 F.2d 321, 325 (10th Cir. 1977); *Schiller v. Cornish (In re Cornish )*, 529 F.2d 1363, 1365 (7th Cir. 1976); *Damon v. Damon*, 283 F.2d 571, 573 (1st Cir. 1960).

The general rule equating counsel fees with alimony appears to be equally applicable in the District of Columbia. In *Boardman v. Cary*, 62 App.D.C. 152, 154, 65 F.2d 600, 602 (D.C.App.1933), the District of Columbia Court of Appeals upheld the rule enunciated by the court in *Myers v. Myers*, 55 App.D.C. 224, 4 F.2d 300 (D.C.App.1925), where it held that a court may award counsel fees in a supplementary decree. The court in *Boardman* expanded this rule by permitting the trial court to award counsel fees in a final decree. Even where the wife was denied alimony, as was the case in *Myers*, the court may still award counsel fees. In *Shima v. Shima*, 78 U.S.App.D.C. 265, 266, 139 F.2d 533, 534 (D.C.App.1943), the court noted that counsel fees need not first be awarded to the wife prior to her making payment to counsel. Rather, the court stated that it is "[t]he practice in this jurisdiction . . . to order the fee paid directly to the attorney."

Reference to the applicable District of Columbia Code sections reinforces the position taken by the Court. District of Columbia Code Section 16–911 (Supp. V 1976) permits the trial court during the pendency of an action for divorce to:

"(1) require the husband . . . to pay alimony to the other spouse for the maintenance of . . . herself . . and suit money, *including counsel fees*, to enable such other spouse to conduct the case, whether as plaintiff or defendant, and enforce any order relating thereto by attachment and imprisonment for disobedience . . . ." (Emphasis added.)

Similarly, D.C.Code Section 16–916(d) (Supp. V 1976) permits the trial court to enforce maintenance and support awards "in the same manner as is provided in section 16–911." Clearly, these statutes, by including counsel fees among other forms of support during the pendency of a divorce proceeding and afterwards, equate *fees* with *alimony* or *support and maintenance* awards.

■ The Court, therefore, concludes that the full amount of counsel fees awarded to the plaintiff in the November 15, 1978, Judgment Order must be allowed, and hence is nondischargeable under Section 17a(7) of the Bankruptcy Act (11 U.S.C. § 35(a)(7)). Accordingly, the obligations ordered reimbursed by the Superior Court order of November 15, 1978, as well as the counsel fee directed in that order will be determined to be nondischargeable debts and an appropriate order will be entered.