**In re David Estel WEST, Debtor.**

**Dana Rayl WEST, Plaintiff,**

v.

**David Estel WEST, Defendant.**

**Bankruptcy No. 85–01100–A.
Adv. No. 85–0475–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Jan. 27, 1989.

---

Charles B. Sullivan, Jr., Arlington, Va., for debtor.

Jason P. Smolen, Sandground, Smolen, Barondess, West and Plevy, P.C., Vienna, Va., for plaintiff.

Richard J. Stahl, Annandale, Va., Trustee.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

■ We are here to determine whether obligations arising from a final decree of divorce are in the nature of alimony, maintenance, or support, and, therefore, nondischargeable under § 523 of the Bankruptcy Code.[1] The plaintiff and defendant (debtor) were married on November 29, 1975, and one child was born of the marriage in 1981. The parties separated in 1983 and the defendant filed a complaint for divorce in Fairfax County, Virginia the same year.

One year later, the defendant also filed a complaint seeking custody of the couple's only child in the Fairfax County Juvenile and Domestic Relations Court. A hearing was held before the Honorable Thomas A. Fortkort, during which Mrs. West testified at length. The juvenile and divorce court cases eventually were merged and Judge Plummer of the Fairfax County Circuit Court presided over the consolidated proceeding, which was hotly contested. Judge Plummer entered the final divorce decree on July 1, 1985, on the grounds of separation in excess of one year and allowed Mrs. West to retain custody of the child.

The decree, in part, ordered the defendant to pay the joint indebtedness of the parties totalling $4,671.65, at the rate of $300.00 per month. The defendant also was directed to pay $10,000.00 to reimburse the plaintiff for legal fees, at the rate of $150.00 per month. The decree, as drafted by counsel for the plaintiff, ultimately stated:

ADJUDGED, ORDERED AND DECREED that the Defendant's request for spousal support is hereby denied on the basis of insufficient funds on the part of the Complainant[.]

On July 31, 1985, the defendant filed a petition in bankruptcy under Chapter 7. The defendant's former wife subsequently filed an adversary proceeding objecting to the discharge of the obligations created by the circuit court. After the dischargeability complaint was filed, Judge Plummer met with the parties at their request to review the terms of the decree. The parties then stipulated to the outcome of that meeting in a pretrial order entered by this Court.

The pretrial order in relevant part provides as follows:

"The purpose of th[e meeting in chambers] was to clarify Judge Plummer's

---

1. In a pretrial order, the parties stipulated that "the issue in this matter is whether or not the attorney's fees and credit card debts are of a judgment debt and therefore entitled to discharge, or in the nature of alimony and nondischargeable." We note that even if the debts owed by the debtor could be classified accurately as a "judgment debt," the issue would not be resolved there. A claim reduced to a judgment may still be determined to be nondischargeable under § 523 of the Bankruptcy Code. *See e.g., Combs v. Richardson,* 838 F.2d 112, 117 (4th Cir.1988). The real issue before this Court is whether the amounts awarded in the decree are *in the nature of* alimony or a property settlement in accordance with principles of federal bankruptcy law. *See* 11 U.S.C. § 523, Historical and Revision Notes, Notes of Committee on the Judiciary House Report No. 95–595, U.S.Code Cong. & Admin.News 1978, p. 5787.

intentions with respect to the payments required of Mr. West as set forth in said Decree of Divorce.

Judge Plummer acknowledged that there was evidence of sexual activity on the part of both parties, but that he only considered same with respect to determining custody. He said that he granted the divorce on grounds of a one-year separation. He further expressed that it was his belief that legal fees incurred in an effort to obtain custody and spousal support are not dischargeable by bankruptcy. He also stated that his order to pay the joint indebtedness of the parties was for the purposes (sic) of having the financial burden of paying these debts be that of Mr. West and not Mrs. West; that Mr. West's payments of $150 per month until a total of $10,000 is reached towards legal fees was, in his opinion, in the nature of alimony. Judge Plummer expressed that after paying for child support, remaining joint debt and $10,000 toward Mr. West's legal fees, there were no other funds with which Mr. West could pay spousal support to Mrs. West. The Judge speculated that perhaps the order should have read on the next to the last paragraph of page 4 of the order as follows:

'ADJUDGED, ORDERED AND DE-CREED that the Defendant's request for *additional* spousal support is hereby denied on the basis of insufficient funds on the part of the Complainant.'

In making these comments, Judge Plummer recognizes that this Court must make its own determination as to the effect of his decree. Counsel have acknowledged and have agreed that Judge Plummer's comments are not binding on this Court and that same are presented for the purposes of clarifying the Order and the import Judge Plummer attached to certain provisions."

The plaintiff claims that the amounts awarded to her to pay the couple's joint indebtedness and legal fees, qualify as payments "in the nature of alimony or support" pursuant to section 523(a)(5) of the Bankruptcy Code, and that Judge Plummer's clarification of his ruling reflects his intent that the awards would not be dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5). Mrs. West concedes that evidence was introduced at the juvenile court hearing which may have precluded her from receiving alimony, but contends that this Court may not now consider such evidence if Judge Plummer granted the final decree solely on the basis of the one-year separation, and made no formal findings of fault against her.

The defendant maintains that the evidence introduced at the juvenile court hearing is significant, as certain findings of "fault" may prohibit a spouse from receiving alimony under Virginia law. *See* Va. Code Ann. §§ 20–91 to 20–107.1 (Supp. 1988). If Mrs. West was ineligible to receive alimony, his argument proceeds, this Court should not be permitted to characterize the amounts awarded to her as being "in the nature of alimony," thereby enabling the obligations to survive his discharge in bankruptcy. Mr. West notes that while state law is not dispositive, it must be given some consideration in view of the fact that there is no federal common law of domestic relations. *See In re Lineberry,* 9 B.R. 700, 704 (Bankr.W.D.Mo.1981).

The debtor further maintains that the proper test for determining whether an award is alimony or a property settlement, is composed of eleven factors identified by the bankruptcy court in *In re Nelson,* 16 B.R. 658, 660–61 (Bankr.M.D.Tenn.1981), *aff'd in part, rev'd in part,* 20 B.R. 1008 (Bankr.M.D.Tenn.1982). The debtor contends that if this Court applied the *Nelson* test to the case at bar, it would conclude that the obligations created were not in the nature of alimony or support.[2]

---

**2.** The eleven factors identified by the *Nelson* court are as follows:

1. Whether the obligations of payment terminate upon the death of either spouse or upon the remarriage of the spouse benefitted by the payments;

2. Whether the obligation terminates when the dependent children reach majority age or are otherwise emancipated;

3. Whether the payments are to be made directly to the spouse;

4. The relative earnings of the parties;

With respect to the amount awarded to the plaintiff as payment for attorney's fees, Mr. West acknowledges that fees often are determined to be nondischargeable if the services rendered were connected to an award for alimony, *see In re Whitehurst*, 10 B.R. 229, 230 (Bankr.M.D.Fla. 1981) (citing majority rule that obligation to pay attorney's fees of former spouse is so tied with obligation of support as to be in the nature of support or alimony), but argues that the instant fees do not fit that category for the reasons indicated above. *See also In re Trichon*, 11 B.R. 658, 661 (Bankr.S.D.N.Y.1981) (former spouse who waived right to alimony as part of property settlement, not entitled to alimony).

Section 523 of the Bankruptcy Code provides that a debt will not be discharged if owed:

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce made in accordance with state or territorial law by a governmental unit or property settlement agreement, but not to the extent that
>
> \* \* \* \* \* \*
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support[.]

11 U.S.C. § 523(a)(5)(B). The legislative history of § 523 indicates that "[w]hat constitutes alimony, maintenance, or support, will be determined under bankruptcy law, not state law." Historical & Revision Notes to § 523, Notes of Committee on the Judiciary House Report No. 95–595, U.S. Code Cong. & Admin.News 1978, p. 6320; *see In re Long*, 794 F.2d 928, 930 (4th Cir.1986); *In re Williams*, 703 F.2d 1055,

1057 (8th Cir.1983). It is the plaintiff then who has the burden of establishing that the debt should be exempt from discharge under the applicable principles. *Matter of Long*, 794 F.2d 928, 930 (4th Cir.1986); *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986); *In re Jakes on the Pike*, 78 B.R. 461, 463 (Bankr.E.D.Va.1987).

In *Tilley v. Jessee*, the Fourth Circuit addressed the issue as to whether the obligations created by a post-nuptial agreement entered into by the debtor and his former spouse were dischargeable in bankruptcy. 789 F.2d 1074, 1075 (4th Cir.1986). Based upon a prior decision of the Fourth Circuit in *In re Melichar*, which indicated that the issue turned upon the "intent of the parties," the lower courts in *Tilley* had ruled that the debtor's obligations were nondischargeable. *Id.* at 1077; 661 F.2d 300, 303 (4th Cir.1981). While the *Tilley* court reaffirmed its position in *Melichar*, that the true intent of the parties controlled, rather than the labels attached to an agreement or the application of state law, the court noted that the holding in *Melichar* did not preclude a court's consideration of the parties' written agreement as persuasive evidence of intent. 789 F.2d at 1077. The Fourth Circuit added that the agreement alone would not be dispositive, but would be substantial obstacle for the plaintiff to overcome. *Id.* at 1078. The court in *Tilley* concluded that the record did not reveal evidence of a "mutual intent" to make the payments in question nondischargeable sufficient to meet the plaintiff's burden. *Id.* In a final footnote, the Fourth Circuit reinforced that "[i]ntent clearly remain[ed] the threshold that must be crossed before any other concerns bec[a]me relevant." *Id.* at 1078 n. 4.

Shortly after *Tilley*, the Fourth Circuit again addressed whether obligations aris-

---

5. Evidence that the spouse relinquished rights in property in return for the payment of the obligations;

6. The length of the parties' marriage and the number of dependent children;

7. The document itself and any inferences which can be drawn from placement of specific provisions within the document;

8. Whether the debt was incurred for the immediate living expenses of the spouse;

9. Whether the payments were intended for the economic safety of the dependent(s);

10. Whether the obligation is enforceable by contempt;

11. Whether the payments are payable in installments over a substantial period of time.

16 B.R. 658, 660–61 (Bankr.M.D.Tenn.1981).

ing pursuant to a divorce decree, specifically a lump-sum alimony award and attorney's fees, were nondischargeable in bankruptcy in *Matter of Long,* 794 F.2d 928 (4th Cir.1986). In *Long,* the bankruptcy court determined that the obligations of the debtor were dischargeable, the district court reversed, and the Fourth Circuit affirmed the reversal. *Id.* at 930. The *Long* court explained that it had "previously held, in the context of a voluntarily executed marital settlement agreement, that the proper test for whether payments are alimony lies in the proof of whether it was the parties' intention that the payments be for support rather than as a property settlement [but that in the *Long* case] the parties had submitted the issues of alimony and property division to the Georgia jury." *Id.* at 931. The *Long* court determined, therefore, that the question under those circumstances was "what the Georgia jury intended the $65,000 lump-sum award to be." *Id.*

The court in *Long* then analyzed the labels applied to the awards by the jury and the instructions that the jury received. *Id.* The *Long* court noted that the label of alimony applied to the lump-sum award was not controlling, but certainly more significant when the trier of fact seemingly understood the distinctions between the legal classifications of alimony and property division, and labelled the awards accordingly. *Id.* The court also noted that the trial court distinguished and explained the significance of the awards. *Id.* On the basis of its review, the Fourth Circuit ultimately held that the "Georgia jury intended the $65,000 award to [the spouse] as alimony for her support and maintenance, and [that the] award [wa]s not dischargeable in bankruptcy." *Id.*

█ It appears then that in determining whether divorce decree awards are nondischargeable, the rule of law established by the Fourth Circuit is that there must be close scrutiny by the bankruptcy court as to "intent." If the divorce decree was obtained by agreement, the court must focus

its examination upon the intent of the parties. *Tilley.* If the divorce proceeding was contested, the court must focus upon the intent of the trier of fact. *Long.* Although the defendant urges this Court to consider several factors designed to reveal intent, some of which have been cited by this Court before, *see In re Jakes on the Pike,* 78 B.R. 461, 463 (Bankr.E.D.Va.1987), those factors are used by courts to "deduce" whether an award is in the nature of alimony. *See e.g. In re Ploski,* 44 B.R. 911 (Bankr.D.N.H.1984) (using *Nelson* factors to construe state court's action). Here the trier of fact has spoken directly to the question of his intent. Even assuming that this Court applied the *Nelson* test, the divorce decree on its face does not address many of the factors, and counsel for the debtor did not introduce any evidence into the record which pertains to these factors, apart from an analysis of the factors in his pre-trial memorandum. We, therefore, find the suggestion by the debtor to use the factors outlined in *Nelson* in this case to be unpersuasive.[3]

What is most notable about the case at bar is the fact that the issues were contested vigorously. Thus, as in *Long,* this Court's inquiry must be directed towards the *actual* intent of the trier of fact. Specifically, we must determine whether the circuit court meant the assumption of debts "to be in lieu of support payments or rather just a means of dividing property upon divorce?" *In re Calhoun,* 715 F.2d 1103, 1108 (6th Cir.1983).

█ Prior to our examination, we must address one threshold issue. The decree entered by the Fairfax County Circuit Court stated that the "Complainant is entitled to a divorce *a vinculo matrimonii,* on the grounds of one (1) year separation," a finding reaffirmed by Judge Plummer in his meeting with the parties. No findings of fault were entered regarding either party. The debtor now requests that we consider the testimony illicited at the juvenile court hearing, which "seemingly" would

3. The Fourth Circuit has not passed upon the usefulness of additional factors to determine intent. *See Tilley,* 789 F.2d 1078, n. 4 (express-

ing no position with regard to the importance of factors cited by the district court to determine whether award was in the nature of alimony).

have deprived Mrs. West from receiving alimony. This position is totally without foundation. We may not consider evidence that Judge Plummer explicitly declined to incorporate in his ruling. Our role here is *not* to rewrite the divorce decree, *see In re Harrell*, 754 F.2d 902, 907 (11th Cir.1985), or to sit as a "super divorce court", *Matter of Wesley*, 36 B.R. 526, 529 (Bankr.S.D. Ohio 1983), for the purpose of affecting the significance of the decree under state law, but to analyze decree awards to determine whether they may be deemed nondischargeable under bankruptcy law. Even if we were to consider the evidence in question we note that it was introduced at a custody hearing, related only to the fitness of Mrs. West as a parent, and would not be relevant to our inquiry here.

■ Returning to our examination of the court's intent, we consider first the document itself. The document is clear in that it states that Mrs. West's request for spousal support was denied. As the Fourth Circuit has indicated, this Court may consider the decree itself as evidence of intent. In this situation, however, we have noted that Judge Plummer did not draft or dictate the wording of the order. Thus, giving rise to the situation here in which Judge Plummer's remarks regarding what he actually meant, contradict the plain wording of the decree. The parties have stipulated that Judge Plummer believed that the order should have stated that *additional* spousal support would be denied, to reflect the significance of his decision to alleviate Mrs. West's financial burden of paying the joint indebtedness and fees. Such an award may be interpreted as having the "effect" of being an award for alimony. *See Matter of Smith*, 3 B.R. 224, 231 (Bankr.E.D.Va.1980).

Undoubtedly the debtor would prefer this Court to hold that the document is clear on its face and refrain from further inquiry, but to do so when the actual intentions of the divorce court are known and acknowledged to by the parties would thwart this Court's effort to adhere to the guidelines set forth above. We note that in

*Long*, the Fourth Circuit concluded that it "must defer to th[e] explicitly rendered conclusion of *intent* by the state court jury", and did so on the basis of indirect evidence alone. 794 F.2d at 931 (emphasis supplied). Here in this extraordinary case, we have the parties agreement as to the divorce court's actual intent, regardless of the labels that were used in the decree.

We note that we do not here consider the Judge's informal characterizations of the amounts awarded as being nondischargeable. As admitted by the parties and the Judge himself, the bankruptcy court must resolve issues of dischargeability. How the divorce court intended to resolve the financial aspects of the case is the crux of our inquiry, and we find that Judge Plummer intended to provide support to the plaintiff by obligating the debtor to pay the parties' joint indebtedness and attorney's fees, thereby creating payments in the nature of alimony, maintenance or support.

We conclude, therefore, that the plaintiff has met her burden of establishing that these awards are not dischargeable, not in the usual way by the presentation of evidence that outweighs the evidence submitted by the defendant, but rather by the stipulation of the parties to the most crucial evidence. The parties then requested this Court make a legal determination regarding its significance. There can be no question as to the basis of the stipulation, since both parties participated in the chambers conference and agreed to report Judge Plummer's remarks in the pre-trial order.

Accordingly, in view of the complete record before the Court, and for the reasons set forth above we must determine that the obligations arising pursuant to the divorce decree, the payment of the parties' joint indebtedness and attorney's fees, are in the nature of alimony, maintenance or support and, therefore, nondischargeable under section 523 of the Bankruptcy Code.[4]

An appropriate order will enter.

4. This Court finds that the divorce court intend-

ed both the payments towards the joint indebt-

edness of the parties and the attorney's fees were payments in the nature of alimony or support. Often the dischargeability of awards for attorney's fees is an issue considered separately on the basis of whether the fees were obtained in connection with an award for ali-

mony or support. *See e.g., In re Midnet,* 84 B.R. 776, 779 (Bankr.M.D.Fla.1988); *Matter of Smith,* 3 B.R. 224, 231 (Bankr.E.D.Va.1981). In view of this Court's finding that the payments towards the parties' joint indebtedness are in the nature of alimony, the result here would be the same.